UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA  :
: Crim. No. 3:CR-15-115
v. :
: (Judge           )
:
GERMAN OSSA-ROCHA :  FILED
Defendant  SCRANTON

INDICTMENT   JUN 09 2015

THE GRAND JURY CHARGES:   PER _____ DEPUTY CLERK

## COUNT I
18 United States Code, Section 1956(h)
(Conspiracy to Commit Money Laundering)

1. From in or about January 1, 2008 and continuing through December 2011, in Monroe County, Pennsylvania, within the Middle District of Pennsylvania, and elsewhere, the defendant,

**GERMAN OSSA-ROCHA**

knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole or in part (a) to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, and (b) to avoid a transaction reporting and recording requirements under State or

1

Federal law, did conspire and agree with others to conduct financial transactions which in fact involved the proceeds of specified unlawful activity, specifically the transfer, delivery, and other disposition of United States currency in the approximate amount of $339,000 that was the proceeds of the distribution of narcotics, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i) and (ii).

2. Title 18, United States Code, Section 1956(a)(1), makes it unlawful for someone, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, to conduct or attempt to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity....... (B) knowing that the transaction is designed in whole or in part – (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or (ii) to avoid a transaction reporting requirement under State or Federal law.

3. Under Title 31, United States Code, Section 5324(a), Structuring Transactions to Evade Reporting Requirement, Domestic Coin and Currency Transactions Involving Financial Institutions, "No person shall,

for the purpose of evading the reporting requirements of section 5313(a) or 5325 or any regulation prescribed under any such section, the reporting or recordkeeping requirements imposed by any order issued under section 5326, .........

(1) cause or attempt to cause a domestic financial institution to fail to file a report required under section 5313(a) or 5325 or any regulation prescribed under any such section, to file a report or maintain a record required by an order issued under section 5326 .....

4. Under Title 31, Code of Federal Regulations, Part 103, Section 1010.410, Records to be Made and Retained by Financial Institutions, each agent, agency, branch, or office located within the United States of a financial institution other than a bank is subject to the requirements of this paragraph (e) with respect to a transmittal of funds in the amount of $3,000 or more:

> "(1) Recordkeeping requirements. (i) For each transmittal order that it accepts as a transmittor's financial institution, a financial institution shall obtain and retain either the original or a microfilm, other copy, or electronic record of the following information relating to the transmittal order:
>
> (A) the name and address of the originator; (B) the amount of the payment order; (C) the execution date of the payment order; (D) any payment instructions received from the originator with the payment order; (E) the identity of the beneficiary's bank; (F) as many of the following items as are received with the payment order, the name and address of the beneficiary, the account number of the beneficiary, and any other specific identifier of the beneficiary; and (G) any form

relating to the transmittal of funds that is completed or signed by the person placing the transmittal order.

5. Under 18 U.S.C. Section 1960, it is a felony to conduct, control, manage, supervise, direct, or own all or part of an unlicensed money transmitting business.

6. The term "unlicensed money transmitting business" under Section 1960(b)(1)(C), means a money transmitting business which affects interstate or foreign commerce in any manner or degree, and otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity.

7. The defendant did conspire and agree with others to conduct financial transactions contrary to the above money laundering and structuring statutes, and in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and (ii), and Section 1960.

## Manner and Means of the Conspiracy

In furtherance of the conspiracy, and to attain the objectives of the conspiracy, the defendant and coconspirators employed the following manner and means:

8. It was part of the conspiracy that on multiple occasions during 2008 through 2011, the defendant received U.S. Currency from coconspirators which represented the unlawful proceeds of drug trafficking.

9. It was part of the conspiracy that on multiple occasions during 2008 through 2011, the defendant and coconspirators used Vigo to transfer funds which represented the unlawful proceeds of drug trafficking. Vigo is a money transfer service owned and operated by Western Union and its respective agents. Its service allows individuals to transfers funds using a respective Vigo agent within 45 states and 21 countries.

10. It was part of the conspiracy that on multiple occasions during 2008 through 2011, the defendant used a money service business and Vigo agent, Tropical Express, Inc., to assist coconspirators hide, conceal, and disguise the unlawful proceeds of drug trafficking.

11. It was part of the conspiracy that on multiple occasions during 2008 through 2011, the defendant received U.S. Currency from coconspirators which represented the unlawful proceeds of drug trafficking, for the purpose of hiding, concealing, and disguising the

unlawful proceeds by transmitting the unlawful proceeds in various increments under $3,000, via electronic transfer using Vigo to the Dominican Republic. The defendant and coconspirators intentionally broke down larger cash transfers into multiple smaller amounts to avoid the legal reporting and record keeping requirements triggered by a currency transaction in the amount of $3,000 or more.

12. It was part of the conspiracy that on multiple occasions during 2008 through 2011, the defendant received U.S. Currency from coconspirators which represented the unlawful proceeds of drug trafficking, for the purpose of structuring the financial transactions to avoid transaction reporting and record keeping requirements under state and federal law by transmitting the unlawful proceeds in various increments via electronic transfer through Vigo to the Dominican Republic. The defendant and coconspirators intentionally broke down larger cash transfers into multiple smaller amounts to avoid the legal reporting and record keeping requirements triggered by a currency transaction in the amount of $3,000 or more.

13. It was part of the conspiracy that on multiple occasions during 2008 through 2011, the defendant and coconspirators obtained

and received nominee "sender" names in order to structure transactions at a financial institution and transfer funds to the Dominican Republic. By using nominee "sender" names, the defendant and coconspirators were able to conceal and disguise the nature, source, and ownership of the unlawful proceeds.

14. It was part of the conspiracy that on multiple occasions during 2008 through 2011 the defendant and coconspirators obtained and received nominee "receiver" names in order to structure transactions at a financial institution and transfer funds to the Dominican Republic. By using nominee "receiver" names, the defendant and coconspirators were able to conceal and disguise the nature, source, and ownership of the unlawful proceeds.

15. It was part of the conspiracy that on multiple occasions during 2008 through 2011, the defendant and coconspirators utilized telephones in order to arrange financial transactions and in order to maintain contact with each other. The defendant and coconspirators had numerous conversations about structuring, assisting in structuring, and attempting to structure financial transactions.

16. It was part of the conspiracy that on multiple occasions during 2008 through 2011, the defendant and coconspirators traveled to a money transfer service, located in the Middle District of Pennsylvania, and engaged in money transfers and structured financial transactions for the purpose of concealing and disguising the nature, source, and ownership of the unlawful proceeds.

All in violation of Title 18, United States Code, Section 1956(h).

THE GRAND JURY FURTHER CHARGES:

## COUNT 2
### 18 United States Code, Section 371
### (Conspiracy to Structure Currency Transactions)

17. Each and every allegation contained in Count 1 of this Indictment is incorporated and realleged for purposes of Count 2.

18. From in or about January 1, 2008 and continuing through December 2011, in Monroe County, Pennsylvania, within the Middle District of Pennsylvania, and elsewhere, the defendant,

### GERMAN OSSA-ROCHA

did knowingly combine, conspire, confederate, and agree with other persons, both known and unknown to the Grand Jury, to commit the following offense against the United States, that is, the Structuring of Currency Transactions, in violation of Title 31, United States Code, Section 5324(a)(1), (2) and (3).

### MANNER AND MEANS OF THE CONSPIRACY

In furtherance of the conspiracy, and to attain the objectives of the conspiracy, the defendant and coconspirators employed the following manner and means:

19. It was part of the conspiracy that on multiple occasions during 2008 through 2011, the defendant received U.S. Currency from coconspirators which represented the unlawful proceeds of drug trafficking, for the purpose of structuring the financial transactions to avoid transaction reporting and recording requirements under state and federal law by transmitting the unlawful proceeds in various increments via electronic transfer through Vigo to the Dominican Republic.

20. It was part of the conspiracy that on multiple occasions during 2008 through 2011, the defendant and coconspirators obtained nominee "sender" names in order to structure transactions at a financial institution and transfer funds to the Dominican Republic. Using nominee "sender" names allowed the defendant and coconspirators to structure multiple financial transactions in an effort to avoid the reporting and recordkeeping requirements triggered by a cash transfer of $3,000 or more.

21. It was part of the conspiracy that on multiple occasions during 2008 through 2011, the defendant and coconspirators obtained nominee "receiver" names in order to structure transactions at a financial institution and transfer funds to the Dominican Republic.

Using nominee "receiver" names allowed the defendant and coconspirators to structure multiple financial transactions in an effort to avoid the reporting and recordkeeping requirements triggered by a cash transfer of $3,000 or more.

22. It was part of the conspiracy that on multiple occasions during 2008 through 2011, the defendant and coconspirators engaged in numerous telephone conversations about structuring, assisting in structuring, and attempting to structure financial transactions.

## OVERT ACTS

In furtherance of the conspiracy, and to effect and accomplish the objects of the conspiracy, the defendant and coconspirators did commit and cause to be committed, the following overt acts, among others, in the Middle District of Pennsylvania and elsewhere:

23. On or about July 16, 2011, the defendant engaged in a telephone conversation with coconspirators and agreed to the use of nominee names for the purpose of electronically transferring U.S. Currency to the Dominican Republic.

24. On or about July 16, 2011, the defendant and coconspirators facilitated the electronic transfer of U.S. Currency to the Dominican

Republic in the amount of $300 using the nominee name of Roberto Antonio Acevedo.

25. On or about July 23, 2011, the defendant engaged in a telephone conversation with coconspirators wherein nominee names and amounts of U.S. Currency were discussed for purposes of facilitating an electronic transfer of currency to the Dominican Republic.

26. On or about July 23, 2011, the defendant and coconspirators facilitated the electronic transfer of U.S. Currency to the Dominican Republic in the amount of $1,500 using the nominee name of Melvin Alberto Marcial.

27. On or about September 19, 2011, the defendant engaged in a telephone conversation with coconspirators wherein nominee names and amounts of U.S. Currency were discussed for purposes of facilitating an electronic transfer of currency to the Dominican Republic.

28. On or about September 19, 2011, the defendant and coconspirators facilitated the electronic transfer of U.S. Currency to the Dominican Republic in the amount of $2,800 using the nominee name of Jose M. Martinez Converthier.

29. On or about September 19, 2011, the defendant engaged in a telephone conversation with coconspirators wherein nominee names and amounts of U.S. Currency were discussed for purposes of facilitating an electronic transfer of currency to the Dominican Republic.

30. On or about September 19, 2011, the defendant and coconspirators facilitated the electronic transfer of U.S. Currency to the Dominican Republic in the amount of $1,400 using the nominee name of Esmeralda Camilo Cepeda.

All in violation of Title 18, United States Code, Section 371.

## THE GRAND JURY FURTHER CHARGES:

### COUNT 3
### 18 United States Code, Section 1960
### (Prohibition of Unlicensed Money Transmitting Businesses)

31. Each and every allegation contained in Counts 1 and 2 of this Indictment is incorporated and realleged for purposes of Count 3.

32. From in or about January 1, 2008 and continuing through December 2011, in Monroe County, Pennsylvania, within the Middle District of Pennsylvania, and elsewhere, the defendant,

### GERMAN OSSA-ROCHA

unlawfully, willfully, and knowingly conducted, controlled, managed, supervised, directed, and owned all and part of an unlicensed money transmitting business, which business affected interstate or foreign commerce in some manner or degree, and which was otherwise involved in the transportation and transmission of funds that were known to the defendant to have been derived from a criminal offense or were intended to be used to promote or support unlawful activity.

In violation of Title 18, United States Code, Sections 1960 and 2.

## FORFEITURE ALLEGATION

33. The allegations contained in Counts 1 through 3 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982, and Title 31, United States Code, Section 5317.

34. Pursuant to Title 18, United States Code, Section 982, and Title 31, United States Code, Section 5317, upon a conviction of an offense in violation of Title 18, United States Code, Section 1956(h), and Title 31, United States Code, Section 5324, the defendant,

### GERMAN OSSA-ROCHA

shall forfeit to the United States of America all property, real or personal, involved in the offenses and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

    a. Contents of M&T Bank account #9852769869 in the name of Tropical Express

    b. money judgment forfeiture in the amount of $339,000.

35. If any of the property described above, as a result of any act or omission of the defendant:

15

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), Title 31, United States Code, Section 5317(c), and by Title 28, United States Code, Section 2461(c).

A TRUE BILL

6-9-15
Date

PETER J. SMITH
United States Attorney